Paul A. Stewart (SBN 153,467)
Paul.Stewart@knobbe.com
Sheila N. Swaroop (SBN 203476)
Sheila.Swaroop@knobbe.com
William O. Adams (SBN 259001)
William.adams@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Nicholas A. Belair (SBN 295380)
Nicholas.Belair@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
333 Bush Street, 21st Floor
San Francisco, CA 94104
Phone: (415) 954-4114
Facsimile: (415) 954-4111

Alexander D. Zeng (SBN 317234)
Alexander.zeng@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Phone: (310) 551-3450
Facsimile: (310) 551-3458

Attorneys for Defendant
Balt USA, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MICROVENTION, INC., <br><br> Plaintiff, <br><br> v. <br><br> BALT USA, LLC, a Delaware Limited Liability Company; DAVID FERRERA; and NGUYEN "JAKE" LE, <br><br> Defendants. | 8:20-cv-02400-JLS-KES <br><br> **DEFENDANTS' MEMORANDUM IN OPPOSITION TO EX PARTE APPLICATION TO CONTINUE CASE SCHEDULE** <br><br> **Hon. Judge Josephine L. Staton** |

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ................................................................................... 1

II. MVI HAS IGNORED THE EXTRAORDINARY SHOWING REQUIRED FOR EX PARTE RELIEF ............................................... 2

III. IF ANY URGENCY EXISTS, IT IS OF MVI'S OWN MAKING .................................................................................................. 4

    A. The Tran And Katayama Laptops ................................................ 4

    B. Balt's Production Of ESI Documents .......................................... 6

    C. The Work Of The Forensic Expert Proposed By MVI ............... 7

    D. The Number Of Discovery Motions ........................................... 9

IV. MVI UNFAIRLY DELAYED THE FILING OF ITS EX PARTE MOTION AFTER THE PARTIES MET AND CONFERRED ....................................................................................... 10

V. MVI HAS NOT SHOWN GOOD CAUSE FOR A SECOND CONTINUANCE ................................................................................... 10

VI. MVI'S TWO CITED CASES ARE PLAINLY DISTINGUISHABLE ............................................................................ 12

VII. CONCLUSION ..................................................................................... 12

**TABLE OF AUTHORITIES**

**Page No(s).**

*Crorama, Inc. v. Dominguez*,
  2019 WL 12340203 (C.D. Cal. Dec. 27, 2019) ......................................... 3

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) .................................................................. 10

*Mikell v. Baxter Healthcare Corp.*,
  2014 WL 12588640 (C.D. Cal. Sept. 16, 2014) ...................................... 12

*Mission Power Eng'g Co. v. Continental Casualty Co.*,
  883 F. Supp. 488 (C.D. Cal. 1995) ............................................... 2, 3, 10

*Sepulveda v. City of Whittier*,
  2018 WL 11360438 (C.D. Cal. July 9, 2018) ......................................... 12

# I. INTRODUCTION

This Court has already extended the case schedule once, and MVI fails to show why ex parte relief is needed to further extend it now. MVI treats its ex parte motion as if it were an ordinary motion, never even mentioning the extraordinary showing that it must make to obtain ex parte relief. But, to obtain ex parte relief, MVI must show that it was diligent and not at fault for creating the emergency that allegedly warrants relief. MVI's motion does not attempt to make this showing, and the evidence shows that MVI created any alleged emergency.

Since at least May 2022, MVI was aware that the forensic expert MVI itself selected was unable to access two of the thirteen computers the expert was tasked with examining. MVI accuses Balt of spoliation, but neglects to mention that the computers were rendered inaccessible due to actions taken by the forensic expert chosen by MVI. In any event, MVI waited until now – in October 2022 – to ask for an extension of the discovery period on this basis. This is the antithesis of diligence.

MVI also complains that its hand-picked forensic expert has been slow. But MVI greatly exaggerates the delays which have occurred. The forensic expert completed much of his work by July, and MVI should have been working with those materials since that time. The work of the forensic expert that has occurred after July 2022 has been minimal, and provides no excuse for the extraordinary relief MVI seeks.

MVI also casts blame for delay on Balt, particularly with respect to ESI discovery and motions to compel. But Balt has been diligent in responding to MVI's ESI discovery requests. Balt completed its production of ESI documents two months ago, and MVI has thus been aware of the scope of Balt's email production months before bringing this motion. And Balt consented to Judge

/ / /

Scott's informal, expedited discovery procedure for all but the very first discovery motion in this case. This greatly reduced any potential delays.

Balt, the corporate defendant in this case, stands ready to proceed under the current schedule, which requires the parties to complete discovery by November 18. Balt has made all of its noticed witnesses available to MVI for depositions prior to this deadline, and is working with MVI to schedule them all. All of these witnesses are available before the close of discovery. MVI has served two deposition notices under Rule 30(b)(6), and Balt's representative will be sitting for the first Rule 30(b)(6) deposition this Thursday, October 20. That same day, the parties will meet and confer over the scope of MVI's second notice, as well as the scope of Balt's single Rule 30(b)(6) notice. This discovery can and should be done by November 18. This case has been pending long enough.

Ironically, it is **MVI** that has not completed its production of ESI documents, and it does not expect to do so until October 28. Despite this, Balt is ready, willing, and able to complete discovery according to the current schedule and move this case forward. MVI has already sought and obtained a prior extension of the case schedule, and the Court should deny MVI's ex parte request to extend discovery for another three months.

## II. MVI HAS IGNORED THE EXTRAORDINARY SHOWING REQUIRED FOR EX PARTE RELIEF

"Ex parte motions are rarely justified." *Mission Power Eng'g Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). They should be filed only if "the tomatoes are about to spoil or the yacht is about to leave the jurisdiction and that all will be lost unless immediate action is taken." *Id.* at 491-92. *See also* Judge Staton's Procedures ¶ 3 ("Ex parte applications are for extraordinary relief only.").

Before a court will even consider a request for ex parte relief, the moving party must make two critical showings.

> First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect.

*Mission Power*, 883 F. Supp. at 492. This second requirement is particularly strict.

> To show that the moving party is without fault, or guilty only of excusable neglect, requires more than a showing that the other party is the sole wrongdoer. It is the creation of the crisis – the necessity for bypassing regular motion procedures – that requires explanation. For example, merely showing that trial is fast approaching and that the opposing party still has not answered crucial interrogatories is insufficient to justify ex parte relief. The moving party must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period.

*Id.* at 493. As this Court similarly has explained: "Merely showing that deadlines are fast approaching is not enough." *Crorama, Inc. v. Dominguez*, 2019 WL 12340203 at *1 (C.D. Cal. Dec. 27, 2019) (Staton, J.).

Despite this settled case law within this District, MVI's ex parte application does not even mention the extraordinary showing needed for ex parte relief. MVI addresses the "good cause" standard for ordinary motions seeking a continuance of a case schedule. Dkt. 221 at 4-5. But this is not an ordinary motion and MVI is obligated to make the additional showing required for ex parte relief. MVI has failed to make the required showing. Most notably, MVI has

///

failed to show why it could not have proceeded by a regular noticed motion months ago.

### III. IF ANY URGENCY EXISTS, IT IS OF MVI'S OWN MAKING

To the extent MVI addresses the ex parte nature of its motion at all, it does so only in a single sentence in its Notice. There, MVI argues that "there is insufficient time to seek relief through a regularly noticed motion" because discovery will close in one month. Dkt. 221 at 1:13-14. This, however, is a situation of MVI's own making. This is evident from an examination of each of the circumstances on which MVI relies in an effort to establish good cause for a continuance. Moreover, even MVI does not see much urgency in this matter. It waited eight days after conferring with Balt about the present motion before filing it on an ex parte basis.

#### A.  The Tran And Katayama Laptops

MVI argues that "a new issue has arisen" regarding the laptops of named defendant Michelle Tran and former defendant Yoshitaka Katayama. Dkt. 221 at 6:13. MVI's supposedly "new issue" is the inability of Sergio Kopelev – the forensic expert selected by MVI and agreed to by the Defendants – to forensically analyze these two laptops because the "Bit Locker" encryption keys for these two laptops could not be found. Herrera Decl. ¶ 24. However, MVI has known since the April 19, 2022 forensic inspection by Mr. Kopelev's team that Balt did not have these encryption keys and that Mr. Kopelov's team could not access the two laptops. Stewart Decl. ¶¶ 5-6. During the month of May 2022, MVI suggested approaches for Balt to recover the encryption keys. *Id.* ¶ 8. But MVI has known since May 2022 that those approaches were unsuccessful and that the two laptops remained inaccessible. *Id.*

Thus, MVI has known about this issue for at least five months. Nevertheless, MVI waited until now to move on an ex parte basis for a continuance of the case schedule based upon this issue. If MVI truly believed

that the lost encryption keys necessitated a continuance, it could have filed a regularly noticed motion back in May, June, July, August, or September. But it did not do so. MVI offers no justification for this delay because it has none.

Moreover, though not directly relevant to MVI's request for extraordinary ex parte relief, Balt believes it is necessary to respond to MVI's unwarranted accusation of spoliation. Dkt. 221 at 6:13. MVI apparently claims that Balt spoliated the Tran and Katayama laptops because Mr. Kopelev has been unable to access them. However, as Balt has explained to MVI, Balt's IT department quarantined the Tran and Katayama laptops under lock and key since the dates when Tran and Katayama left their employment with Balt. Stewart Decl. ¶ 4; Ex. 2 at 1 (May 12, 2022 email). Immediately before meeting with Mr. Kopelev's team on April 19, Balt's IT department tested these two laptops (and all other laptops provided at the meeting) to confirm that they were accessible using the Balt IT department's ordinary administrative credentials. *Id*. Using those credentials, Balt's IT department successfully accessed all of the laptops. *Id*. Balt's IT department provided those credentials to Mr. Kopelev's team during the meeting. *Id.* Thus, all evidence contained on the laptops was preserved and intact when presented to Mr. Kopelev's team.

Mr. Kopelev's team then began its examination of the laptops, conducting whatever examination it deemed appropriate. In the course of this examination, Mr. Kopelev's team did something which triggered the Bit Locker encryption function to take effect on the Tran and Katayama laptops. As a result, Balt understands from Mr. Kopelev's team that these two laptops are now encrypted and inaccessible using Balt's ordinary administrative credentials. *Id.* ¶ 6.

At the request of Mr. Kopelev's team, Balt's IT department then attempted to locate the encryption keys for these two laptops, known as Bit Locker keys. *Id.* ¶ 7. These keys, Mr. Kopelev's team explained, were now necessary to access the two laptops. Balt was unable to locate them. *Id*. After its own initial search,

Balt worked in good faith with Mr. Kopelev's team, MVI, and MVI's expert in an effort to locate the encryption keys, but could not do so. *Id.* ¶ 8. Balt acted entirely in good faith to address the encryption function triggered by the expert's activities, and MVI's accusations of spoliation are meritless.

### B. Balt's Production Of ESI Documents

Next, MVI argues that there have been delays in Balt's production of ESI documents. Dkt. 221 at 5:6-22. MVI complains that there was a 10-month delay between its first proposal of an ESI protocol and Judge Scott's order granting entry of an ESI protocol in March 2022. Herrera Decl. ¶ 7. However, this 10-month delay plainly works against the grant of ex parte relief here. If the matter were so urgent, MVI should have moved more quickly for entry of the ESI order. ESI discovery then would have begun more promptly.

MVI also complains that Balt somehow unreasonably delayed production of its ESI after receiving MVI's search requests on April 29, 2022. *Id.* ¶ 8. However, this is simply untrue. MVI's April 29 search terms were plainly not compliant with the ESI protocol. That protocol provided: "A disjunctive combination of multiple words or phrases (e.g., 'computer' or 'system') broadens the search, and thus each word or phrase shall count as a separate search term." Dkt. 138 § 6(c). MVI served Balt with literally dozens of search terms separated by the disjunctive word "or," that it insisted be counted as single search terms. *See* Dkt. 166 at 1 (discussing MVI's search terms 2 and 4).

Balt understandably objected to these search terms, and thus the issue had to be resolved by Judge Scott. Balt agreed to Judge Scott's expedited procedure to minimize any delay. Judge Scott resolved the motion on letter briefs filed by the parties shortly after the dispute arose, and Judge Scott issued her order the next business day. While Judge Scott ruled in MVI's favor, she did so by striking the language from the ESI protocol quoted above. Dkt. 170 at 18:10. It was

/ / /

plainly reasonable for Balt to rely on the plain language of the ESI protocol, even though Judge Scott ultimately struck that language.

MVI also complains about alleged delays in Balt's production of ESI after Judge Scott's July 18, 2022 order. Herrera Decl. ¶ 8. But Judge Scott ordered Balt to begin its ESI production within 10 days and to complete its production within 30 days. Dkt. 170 at 19:8-21:8. Despite the volume of production – which MVI has estimated to include 800,000 pages of ESI, Herrera Decl. ¶ 8 – Balt completed its production as ordered. Stewart Decl. ¶ 17. As MVI concedes, production of Balt's ESI was completed two months ago. Herrera Decl. ¶ 8.

MVI's complaint that the ESI production is too large for it to review under the current schedule is doubly flawed. First, MVI has known of the size of the production for two months. MVI could have moved for a continuance of the discovery cut-off date at that time if it believed it would be necessary, rather than waiting two months and seeking emergency ex parte relief. Second, the large volume of Balt's ESI production is a problem of MVI's own making. Balt explained to MVI that the search terms chosen by MVI would lead to the production of an inordinate amount of irrelevant information. Stewart Decl. ¶ 16. But MVI insisted on moving forward with its overbroad search terms, even going to Judge Scott to force the production of documents responsive to those search terms.

C.      **The Work Of The Forensic Expert Proposed By MVI**

As another excuse, MVI complains about the speed of the work of Mr. Kopelev. Dkt. 221 at 5-6. As mentioned above, Mr. Kopelev is the forensic expert proposed by MVI itself to examine Balt's laptops. Stewart Decl. ¶ 2. MVI thus shares part of the blame with Mr. Kopelev for any delays that may have occurred.

Moreover, MVI greatly exaggerates the amount of delay caused by the expert it selected. Mr. Kopelev has prepared reports for 11 laptops. For the first

seven of those laptops, Mr. Kopelev submitted his reports to Balt for privilege review between May 24 and May 27, about a month after Mr. Kopelev made copies of these laptops. Stewart Decl. ¶ 10. Balt completed its privilege review of these reports – and nearly all other reports[1] – within the 10-day deadline provided by the forensic protocol. *Id*. Mr. Kopelev's team then provided the first three of the redacted reports to MVI on June 10, about a week after Balt completed its privilege review. *Id.* ¶ 11. Mr. Kopelev's team provided the remaining four redacted reports to MVI between June 16 and July 18, three months ago. *Id.*

      Mr. Kopelev's team provided Balt with two additional reports for privilege review on June 3, less than two weeks after the initial batch of seven reports. *Id.* ¶ 12. Balt again timely completed its review. Mr. Kopelev's team then provided its redacted reports to MVI on July 15 and July 18, again three months ago. *Id.*

      If MVI had any issues regarding the speed of production of these nine reports, MVI should have raised that issue with this Court at least three months ago. Again, it chose not to do so, and instead is seeking ex parte relief on an emergency basis.

      Balt understands Mr. Kopelev's team has had technical difficulties in preparing his final two reports, which are unrelated to the Tran and Katayama laptops. MVI received one of these reports on September 1, six weeks ago. Balt understands that Mr. Kopelev's team is completing the redactions to the final report and should have it to MVI in a matter of a few days. But Mr. Kopelev's team has been informing MVI for months of its internal difficulties in forensically examining these two computer devices and to expect delays. Stewart Decl. ¶ 13.

///

---

[1] For one report, Balt requested and received a short extension of time because Balt was required to review the text of several hundred thousand text messages. Stewart Decl. ¶ 10.

Thus, again, if MVI thought this delay from the expert it selected justified a continuance, it should have asked for that continuance long ago.

### D. The Number Of Discovery Motions

As its final excuse, MVI complains that it has filed 11 discovery motions before Judge Scott. Dkt. 221 at 6-7. However, MVI ignores the fact that the 10 most recent discovery motions were all decided using Judge Scott's informal, expedited discovery procedure. Under this procedure, when a discovery dispute arises, the parties contact Judge Scott's chambers to schedule a telephonic hearing, usually within about a week. During that week, the parties are required to submit simultaneous two-page letter briefs, and Judge Scott conducts the hearing the following day. In almost every instance, Judge Scott has ruled from the bench at the hearing.

Thus, these 10 discovery disputes did not result in any significant delay. Moreover, these discovery disputes did not delay discovery generally, but only discovery of the specific issue presented to Judge Scott, and then only for about a week. Balt's discovery efforts proceeded unabated while Judge Scott resolved these discovery disputes. MVI does not explain how these short delays regarding single issues, most decided many months ago, justify its request for ex parte relief.

In addition, MVI is simply wrong when it states that "Judge Scott has commented on more than one occasion that a discovery extension may likely be needed in view of the significant and repeated delays in connection with the discovery process." Dkt. 221 at 7:2-4 (citing Herrera Decl., Exs. 2-3). MVI's own transcript excerpts make clear that Judge Scott never offered any opinion on the appropriateness of an extension of time. Instead, in the two cited transcripts, Judge Scott merely advised the parties that if they both believed an extension was necessary, they should submit a stipulation to this Court showing good cause.

///

- 9 -

Herrera Decl., Ex. 2 at 8:9-15; Ex. 3 at 69:19-70:10. Thus, MVI's motion hardly comes with the endorsement of Judge Scott.

## IV. MVI UNFAIRLY DELAYED THE FILING OF ITS EX PARTE MOTION AFTER THE PARTIES MET AND CONFERRED

"[E]x parte motions are inherently unfair, and they pose a threat to the administration of justice." *Mission Power*, 883 F. Supp. at 490. "They debilitate the adversary system. Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced. Often, the moving party's papers reflect days, even weeks, of investigation and preparation; the opposing party has perhaps a day or two." *Id.*

MVI has taken full advantage of this unfairness. The parties met and conferred regarding this ex parte motion on October 10. Herrera Decl. ¶ 2. MVI then took **eight days** to file this ex parte motion, giving Balt only 24 hours to respond. This unfairness is reason enough alone to deny the motion. It also further illustrates the lack of perceived urgency on the part of MVI.

## V. MVI HAS NOT SHOWN GOOD CAUSE FOR A SECOND CONTINUANCE

MVI concedes that this is its second request for a continuance. Dkt. 221 at 1. The first request resulted in more than a 4½ month extension of the discovery period. Dkt. 144. MVI now seeks 3 additional months of discovery and a like continuance of all other pretrial dates. Dkt. 221 at 1-2. MVI also concedes that it must show "good cause" to obtain its requested continuance, and that the focus of the good cause inquiry is on MVI's diligence. *Id.* at 4-5. If [the moving] party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

MVI has not been diligent here. As an initial matter, as just discussed, MVI has not even been diligent in filing its ex parte motion. It could have filed

///

- 10 -

it months ago as a regularly noticed motion. Equally important, MVI has not been diligent in seeking to complete discovery.

Balt will begin again with the Tran and Katayama laptops. As discussed above, Mr. Kopelev's team was unable to access these laptops back in April 2022, and MVI was well aware of this. In May 2022, the parties and Mr. Kopelev's team engaged in further efforts to try to access the two laptops, but were unsuccessful. MVI seemingly had exhausted its efforts. But now, MVI claims it wants to do something more to try to access these laptops. It does not explain what else it might do, but asks for three more months to do it. MVI has had from May until now to try these unspecified additional things, but failed to try any of them. Indeed, MVI still has not contacted Balt or Mr. Kopelev with any request to undertake additional efforts. MVI has been anything but diligent.

MVI also has not been diligent in its review of the materials Mr. Kopelev's team has provided. As explained above, MVI has had three of Mr. Kopelev's reports since June 10, 2022. Stewart Decl. ¶ 11. It received six more by July 18, 2022. *Id.* ¶¶ 10-12. MVI therefore has had four to five months to review these reports. Any short delay by Mr. Kopelev's team in providing these reports provides no justification for MVI's own lengthy delay.

MVI received the tenth report on September 1, 2022, six weeks ago, and another four weeks remain in the discovery period. *Id.* ¶ 13. Ten weeks should be plenty of time to review this report. MVI should receive the final report in a matter of days, leaving it four weeks to analyze a single report. As long as MVI is diligent, it has not been prejudiced by any delay of Mr. Kopelev's team.

Finally, MVI has not been diligent with respect to ESI discovery. As mentioned above, MVI delayed 10 months before seeking an order entering the ESI protocol. But for that delay, ESI discovery could have begun 10 months earlier. Moreover, as discussed above, Balt has not caused any unwarranted delays of ESI discovery. To the contrary, it is MVI that is proceeding slowly.

As mentioned above, MVI does not expect to complete its own production of ESI documents until October 28, even though MVI has had Balt's search terms for over two months.

### VI. MVI'S TWO CITED CASES ARE PLAINLY DISTINGUISHABLE

MVI cites just two cases to support its attempted showing of good cause and diligence. Both cases are clearly distinguishable.

First, in *Mikell v. Baxter Healthcare Corp.*, 2014 WL 12588640 at *6 (C.D. Cal. Sept. 16, 2014), the moving party learned during a deposition taken one day before the close of discovery that its opponent had suppressed documents. Because this information came to light so late in discovery through no fault of the moving party, the court found the moving party to have been diligent in seeking an additional one month for discovery. *Id.* Here, MVI points to no recent events that warrant a three-month continuance of the discovery period.

Second, *Sepulveda v. City of Whittier*, 2018 WL 11360438 at *4-*5 (C.D. Cal. July 9, 2018), involved a motion to amend a complaint to add two non-party police officers as defendants. The plaintiff was informed by the police department of the name of the defendant police officers on the night of the incident, but omitted the names of the non-party officers. *Id.* Likewise, the police report mentioned only the party officers. *Id.* The plaintiff moved to add the non-party officers when she later learned of their identities and involvement through depositions. *Id.* Again, because the plaintiff moved diligently upon discovery of the non-party officers, the court permitted the amendment. *Id.* No similar circumstances are present here.

### VII. CONCLUSION

MVI has not shown entitlement to extraordinary ex parte relief. Nor has it shown good cause for a continuance of the discovery period. Accordingly, MVI's ex parte motion should be denied.

|   |   |
|---|---|
|   | Respectfully submitted, |
|   | KNOBBE, MARTENS, OLSON & BEAR, LLP |
| Dated: October 19, 2022 | By: */s/ Paul A. Stewart*<br>Paul A. Stewart<br>Sheila N. Swaroop<br>William O. Adams<br>Nicholas A. Belair<br>Alexander D. Zeng |
|   | Attorneys for Defendant Balt USA, LLC |

56482377

- 13 -